STATE OF NORTH CAROLINA v. DECARLOS MONTE MOSES

No. COA09-1468

(Filed 20 July 2010)

**1. Constitutional Law— right to counsel—defendant initiated contact—motion to suppress statement**

The trial court did not err in a robbery and assault case by denying defendant's motion to suppress his statement to a police officer because defendant initiated contact with the officer after he had asserted his *Miranda* right to counsel.

---

**2. Evidence— striking a witness's testimony—failure to raise constitutional issues at trial—no prejudice**

The trial court did not err in a robbery and assault case by not striking a witness's testimony upon his refusal to answer further questions or submit himself to cross-examination. Defendant did not raise any constitutional objections to the witness's testimony at trial and failed to make a motion to strike the witness's entire testimony. Even assuming *arguendo*, that the trial court erred in failing to strike the State's final question, defendant failed to show prejudice.

**3. Appeal and Error— preservation of issues—sufficiency of the evidence—failure to move to dismiss**

Defendant's argument that there was insufficient evidence to support the charges of robbery or conspiracy to commit robbery was not preserved for appellate review where defendant's trial counsel did not move to dismiss any charges against defendant at trial.

**4. Constitutional Law— effective assistance of counsel— motion to dismiss—no reasonable probability of different outcome**

Defendant did not receive ineffective assistance of counsel in a robbery and assault case where his trial counsel did not move to dismiss for insufficient evidence of the charges against him. There was no reasonable probability that defense counsel's failure to move for dismissal resulted in a different outcome.

**5. Sentencing— robbery and possession of stolen goods— proceeds of the same robbery—error to sentence for both convictions**

The trial court erred by sentencing defendant for both robbery and possession of stolen property as the Legislature did not intend to subject a defendant to multiple punishments for both charges where the stolen goods possessed were the proceeds of the same robbery.

Appeal by defendant from judgments entered 19 March 2009 by Judge J.B. Allen, Jr. in Durham County Superior Court. Heard in the Court of Appeals 11 May 2010.

*Attorney General Roy Cooper, by Assistant Attorney General David D. Lennon, for the State.*

*Richard E. Jester, for defendant-appellant.*

CALABRIA, Judge.

Decarlos Monte Moses ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of robbery with a dangerous weapon, conspiracy to commit robbery, assault by pointing a gun and possession of stolen goods. We find no error at trial, but vacate defendant's judgment for possession of stolen goods.

## I. Background

Shortly after midnight on 2 July 2008, Kimberly Delores ("Ms. Delores") and Victor Manuel ("Manuel") (collectively "the victims") had just completed their shifts at a Hardee's restaurant in Durham, North Carolina. While the victims were in the Hardee's parking lot, they were approached by a red and white pickup truck occupied by two males. While the driver of the pickup truck exited the truck and asked the victims for directions, the passenger also exited the truck, pulled out a gun, and demanded money. Manuel surrendered his cellular telephone and his wallet, which contained immigration papers and some amount of cash.

After the robbery, Ms. Dolores called the cell phone that was stolen from Manuel. Ms. Dolores talked to the person who answered and asked for Manuel's immigration papers to be returned. Later, she also sent a text message to the cell phone making the same request. Ms. Dolores received a response agreeing to return the stolen property for $200. She then contacted the Durham Police Department ("the DPD").

The DPD, with the cooperation of Ms. Dolores, set up an operation to retrieve the stolen items. Ms. Dolores arranged for a meeting in front of a Target store in Durham on 15 July 2008 to pay money for the return of Manuel's phone and papers. When defendant and another man (later determined to be defendant's cousin) arrived at the prearranged time, the DPD placed both men under arrest. After defendant was arrested, Manuel's cell phone was recovered during a subsequent search of defendant's apartment.

Defendant was taken to DPD headquarters. Investigator David Anthony ("Investigator Anthony") advised defendant of his *Miranda* rights at 12:45 p.m. At that time, defendant indicated on a *Miranda* rights form that he did not wish to speak to the DPD unless he had an attorney present. As a result, Investigator Anthony ceased questioning defendant.

Defendant was then transferred to DPD Substation 3 for processing. At that time, defendant reinitiated contact with Investigator Anthony and indicated a desire to discuss the case. At 3:55 p.m., Investigator Anthony again advised defendant of his *Miranda* rights, and defendant waived these rights in writing. Defendant then provided Investigator Anthony with a detailed statement about his involvement with the robbery.

The DPD had previously arrested defendant's alleged partner, Donnelle Wilkerson ("Wilkerson"), on 3 July 2008. Wilkerson was driving a red and white pickup truck at the time of his arrest. A search of the pickup truck yielded a .38 caliber Smith and Wesson handgun hidden in a boxing glove. The handgun was later identified by Ms. Delores as the one used during the robbery.

Defendant was indicted for the offenses of robbery with a dangerous weapon, conspiracy to commit robbery, assault by pointing a gun, and possession of stolen property. Beginning 17 March 2009, he was tried by a jury in Durham County Superior Court. At trial, defendant made a motion to suppress his statement to the DPD. After a *voir dire* hearing, the trial court orally made findings of fact and conclusions of law denying defendant's motion.

Wilkerson was called to testify during the trial. Wilkerson was testifying as part of a plea agreement under which he would receive a reduced sentence in exchange for his testimony against defendant. However, Wilkerson refused to answer any of the State's questions regarding defendant's involvement with the robbery. As a result, the trial court excused Wilkerson from further testimony.

On 19 March 2009, the jury returned verdicts of guilty to all charges. For the conviction for robbery with a dangerous weapon, defendant was sentenced to a minimum of 77 months to a maximum of 102 months. For the conviction for conspiracy to commit robbery, defendant was sentenced to a minimum of 29 months to a maximum of 44 months. These sentences were to be served consecutively in the North Carolina Department of Correction.

For the conviction for assault by pointing a gun, defendant was sentenced to 75 days imprisonment. This sentence was suspended and defendant was placed on probation for a period of 36 months. Defendant's probation would begin at the expiration of his active sentences.

Finally, for the conviction for possession of stolen property, defendant was sentenced to a minimum of 8 months to a maximum of

10 months in the North Carolina Department of Correction. This sentence was also suspended and defendant was placed on probation for a period of 36 months, to begin at the expiration of all other sentences. Defendant appeals.

## II. Motion to Suppress

[1] Defendant argues that the trial court erred by denying his motion to suppress his statement to the DPD because defendant did not initiate conversation with Investigator Anthony after he asserted his *Miranda* right to counsel. We disagree.

> Our review of a denial of a motion to suppress by the trial court is "limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."

*State v. Barden*, 356 N.C. 316, 340, 572 S.E.2d 108, 125 (2002) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). "If no exceptions are taken to findings of fact, such findings are presumed to be supported by competent evidence and are binding on appeal." *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (internal quotations and citation omitted).

Defendant has not challenged any of the trial court's oral findings of fact. As a result, our review of the trial court's denial of defendant's motion to suppress is limited to whether the unchallenged findings of fact ultimately support the trial court's conclusions of law.

The trial court found as fact that defendant initially had invoked his *Miranda* right to counsel. "Once an accused invokes his right to counsel during a custodial interrogation, the interrogation must cease and cannot be resumed without an attorney being present *unless the accused himself initiates further communication, exchanges, or conversations with the police.*" *State v. Fisher*, 158 N.C. App. 133, 142, 580 S.E.2d 405, 413 (2003) (internal quotations and citations omitted). When a defendant initiates conduct after asserting his *Miranda* right to counsel during interrogation, our Courts have required

> (1) "a finding of fact as to who initiated the communication between the defendant and the officers which resulted in his inculpatory statement while in custody and after he had invoked the right to have counsel present during interrogation[;]" and (2)

"findings and conclusions establishing whether the defendant validly waived the right to counsel and to silence under the totality of the circumstances . . . ."

*Id.* at 144, 580 S.E.2d at 414 (internal citation omitted) (quoting *State v. Lang*, 309 N.C. 512, 521-22, 308 S.E.2d 317, 321-22 (1983)).

In the instant case, the trial court orally found "that the Defendant reinitiated conversation with Anthony and said he wanted to talk to him." The trial court also found that defendant was not under the influence of any controlled substances, that defendant was not promised or threatened in any way and that defendant was again fully advised again of his *Miranda* rights before he provided a statement to the DPD. Finally, the Court found that

> the Defendant signed a yes when [Investigator Anthony] said do you understand these rights explained to you. Signed yes. Stated yes when [Investigator Anthony] said do you have in mind do you wish to answer any questions. Do you wish to answer any questions without a lawyer present, yes. And the Court finds that he did give a statement at this time.

These unchallenged findings of fact, which are binding on appeal, fully support the trial court's conclusion that "considering the totality of the circumstances . . . that [defendant] freely, voluntarily and knowingly reinitiated his statement and made a statement and it will come in over the objections of the Defendant." After reviewing the trial court's oral findings of fact and conclusions of law, we determine that the trial court properly denied defendant's motion to suppress. This assignment of error is overruled.

### III. Wilkerson's Testimony

[2] Defendant argues that the trial court erred by not striking Wilkerson's testimony upon his refusal to answer questions and not submit himself to cross-examination violating defendant's constitutional right to cross-examine witnesses against him. We disagree.

Wilkerson acknowledged that he knew defendant and that Wilkerson had been arrested for participation in the robbery. However, Wilkerson refused to answer any questions regarding defendant's involvement in the robbery. As a result, the State requested to treat Wilkerson as a hostile witness. In response, defendant's counsel stated, "Your Honor, I'm going to object as to the questioning. . . . I'm just, again, afraid of the prejudicial value of having him here and

how they're going to, the jury's going to[.]" In response, the trial court, cognizant of the State's arrangement with Wilkerson, opted to give the State "a little leeway." When Wilkerson still refused to answer questions regarding defendant's involvement in the robbery, the trial court excused him. Defendant's counsel then moved to strike only the State's final question, "Sir, isn't it true that Monte—Decarlos Monte Moses, held a gun on the victims—while you were standing there[.]" The trial court denied the motion to strike because Wilkerson did not answer the question.

Defendant did not raise any constitutional objections to Wilkerson's testimony at trial. Additionally, defendant did not make a motion to strike Wilkerson's entire testimony at trial. "[I]n order for an appellant to assert a constitutional or statutory right on appeal, the right must have been asserted and the issue raised before the trial court. In addition, it must affirmatively appear on the record that the issue was passed upon by the trial court." *State v. McDowell*, 301 N.C. 279, 291, 271 S.E.2d 286, 294 (1980) (internal citation omitted); *see also* N.C.R. App. P. 10(b)(1) (2008) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion . . . [and] to obtain a ruling upon the party's request, objection or motion."). Therefore, we limit our review to the specific question that defendant moved to strike.

The trial court's denial of a motion to strike will not be disturbed on appeal absent an abuse of discretion. *State v. Smith*, 291 N.C. 505, 518, 231 S.E.2d 663, 672 (1977). An abuse of discretion is defined as a ruling that "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Elliott*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006) (internal quotations and citation omitted). In the instant case, we discern no abuse of discretion by the trial court. Wilkerson's refusal to answer the State's question regarding defendant's participation in the robbery did not implicate defendant in the crime referred to in the question.

Furthermore, assuming *arguendo* that the trial court should have struck the State's question, defendant has failed to show any prejudice. Defendant's statement to Investigator Anthony, properly admitted into evidence, clearly indicated that defendant did in fact hold a gun on the victims. This assignment of error is overruled.

### III. Motion to Dismiss

[3] Defendant argues that there is insufficient evidence of either robbery or conspiracy to commit robbery to support submitting the

charges to the jury. As defendant failed to preserve this issue for appellate review by making a motion to dismiss at trial, we dismiss this argument.

Defendant concedes that his trial counsel failed to make a motion to dismiss the charges at trial. "A defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action . . . at trial." N.C.R. App. P. 10(b)(3) (2008). Because defendant's trial counsel failed to make a motion to dismiss any of the charges at trial, we dismiss this assignment of error as not preserved for appellate review.

### IV.  Ineffective Assistance of Counsel

[4] In the alternative, defendant argues that trial counsel's failure to make a motion to dismiss the charges of robbery and conspiracy to commit robbery constitutes ineffective assistance of counsel. We disagree.

> To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. In order to establish prejudice, [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. Tanner*, 193 N.C. App. 150, 154, 666 S.E.2d 845, 849 (2008), *rev'd on other grounds*, —— N.C. ——, —— S.E.2d (2010) (internal quotations and citations omitted). In the instant case, we examine the merits of defendant's motion to dismiss claims to determine whether there is a reasonable probability that defendant's trial counsel's failure to move for dismissal of the charges would have resulted in a different outcome.

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Wright*, —— N.C. App. ——, ——, 685 S.E.2d 109, 115 (2009) (internal quotations and citation omitted). "Substantial evidence is evidence that a reasonable mind might find adequate to support a conclusion." *State v. Coleman*, —— N.C. App. ——, ——, 684 S.E.2d 513, 516 (2009) (internal

quotations and citation omitted). A trial court's ruling on a motion to dismiss is reviewed *de novo. Id.*

"The elements of robbery with a dangerous weapon are: '(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of the person is endangered or threatened.' " *State v. Hussey*, 194 N.C. App. 516, 520, 669 S.E.2d 864, 866 (2008) (quoting *State v. Mann*, 355 N.C. 294, 303, 560 S.E.2d 776, 782 (2002)).

"A criminal conspiracy is an agreement, express or implied, between two or more persons to do an unlawful act or to do a lawful act by unlawful means." *State v. Clark*, 137 N.C. App. 90, 95, 527 S.E.2d 319, 322 (2000) (internal quotations and citation omitted).

> In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. Nor is it necessary that the unlawful act be completed. A conspiracy may be shown by circumstantial evidence, or by a defendant's behavior. Conspiracy may also be inferred from the conduct of the other parties to the conspiracy. [P]roof of a conspiracy [is generally] established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.

*State v. Jenkins*, 167 N.C. App. 696, 699-700, 606 S.E.2d 430, 432-33 (2005) (internal quotations and citations omitted).

In the instant case, the details of defendant's statements to the DPD provide sufficient evidence to submit these charges to the jury. Defendant's statement indicated that he and Wilkerson drove together to the Hardee's parking lot, where they passed a Hispanic male and a white female. The two men then turned around and Wilkerson exited the truck and spoke to Manuel and Ms. Dolores. Defendant removed a silver revolver from inside of a boxing glove that was in the truck, approached the victims and raised the revolver. Wilkerson took the revolver and demanded money from the victims. Defendant and Wilkerson then took two cell phones and a wallet, returned to Wilkerson's truck and fled. The revolver was later recovered from a boxing glove in Wilkerson's truck, and Manuel's cell phone was later recovered from defendant's apartment. This evidence, taken in the light most favorable to the State, is sufficient for

a jury to infer that defendant and Wilkerson conspired to commit and did actually commit the offense of robbery with a dangerous weapon. Therefore, the trial court properly submitted the charges of conspiracy to commit robbery and robbery with a dangerous weapon to the jury. This assignment of error is overruled.

## V. Sentencing

**[5]** Defendant argues that the trial court erred by sentencing defendant for both robbery and possession of stolen property, in violation of his constitutional double jeopardy right. We agree.

Defendant did not object to his sentencing at trial. However, N.C. Gen. Stat. § 15A-1446(d)(18) provides:

> Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division . . . (18) The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law.

N.C. Gen. Stat. § 15A-1446(d)(18) (2009). Therefore, we address the merits of defendant's argument.

"The intent of the Legislature controls the interpretation of a statute." *State v. Perry*, 305 N.C. 225, 235, 287 S.E.2d 810, 816 (1982).

> [O]ur case law favors the imposition of a single punishment unless otherwise clearly provided by statute. In construing a criminal statute, the presumption is against multiple punishments in the absence of a contrary legislative intent. The rule of lenity forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention.

*State v. Garris*, 191 N.C. App. 276, 284, 663 S.E.2d 340, 347 (2008) (internal quotations and citations omitted).

Defendant relies upon *Perry* and its progeny for the proposition that imposing a sentence for both robbery and possession of property taken during the commission of the robbery violates double jeopardy principles. While defendant misstates the basis of the holding in *Perry*, he is correct that the reasoning in *Perry* is applicable to the instant case.

In *Perry*, our Supreme Court determined that larceny and the possession of stolen goods were separate and distinct crimes because "[e]ach crime 'requires proof of an additional fact which the other does not.'" 305 N.C. at 234, 287 S.E.2d at 815 (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 184, 76 L. Ed. 306, 309 (1932)). As a result, the Court held that prosecuting a defendant for both offenses did not violate the constitutional protections against double jeopardy. *Id.* at 233-34, 287 S.E.2d at 815-16.

However, the *Perry* Court then analyzed the legislative intent of the recently enacted possession of stolen goods statute, N.C. Gen. Stat. § 14-71.1, to determine whether the Legislature intended to punish a defendant for both the common law offense of larceny and the statutory offense of possession of stolen goods obtained from that same larceny. *Id.* at 234-35, 287 S.E.2d at 815-16. The Court explained the impetus for the possession of stolen goods statute as follows:

> Prior to the enactment of our statutes creating the statutory offense of possession of stolen property, the mere possession of such property was not a crime. Then, as now, upon evidence *only* that an individual was found to be in possession of stolen property, if the State could not prove possession so recent after the larceny as to raise the presumption that that individual stole it, he could not be convicted of larceny. If the State could not prove that someone else stole it, he likewise could not be convicted of receiving stolen property as our Court decisions had established that recent possession did not permit a presumption of receiving. In that situation, many individuals found in possession of stolen property, including known dealers in such goods, were going unprosecuted. We believe it was with this background in mind that the Legislature enacted our possession statutes.

*Id.* at 235, 287 S.E.2d at 816. As a result, the *Perry* Court concluded that,

> having determined that the crimes of larceny, receiving, and possession of stolen property are separate and distinct offenses, but having concluded that the Legislature did not intend to punish an individual for receiving or possession of the same goods that he stole, we hold that, though a defendant may be indicted and tried on charges of larceny, receiving, and possession of the same property, he may be convicted of only one of those offenses.

*Id.* at 236-37, 287 S.E.2d at 817.

In the nearly thirty years since *Perry* was decided, the Legislature has made no substantive changes to N.C. Gen. Stat. § 14-71.1 that would indicate its disfavor with the *Perry* Court's interpretation of that statute. As a result, we find the statutory interpretation in *Perry* instructive in the instant case, as "[l]arceny is a lesser included offense of armed robbery." *State v. Beamer*, 339 N.C. 477, 485, 451 S.E.2d 190, 194 (1994). As stated in *Perry*, the Legislature created the statutory offense of possession of stolen goods as a substitute for the common law offense of larceny in those situations in which the State could not provide sufficient evidence that the defendant stole the property at issue. *Perry*, 305 N.C. at 235, 287 S.E.2d at 816. Considering this enactment background, we conclude that the Legislature also did not intend to subject a defendant to multiple punishments for both robbery and the possession of stolen goods that were the proceeds of the same robbery. Thus, it was improper for the trial court to sentence defendant to separate and consecutive punishments for these two offenses, and we arrest judgment on defendant's conviction for felony possession of stolen goods.

## VI. Conclusion

Defendant has failed to bring forth any argument regarding his remaining assignments of error. As such, we deem these assignments of error abandoned pursuant to N.C.R. App. P. 28(b)(6) (2008). Defendant received a fair trial, free from error. However, defendant was improperly sentenced for both robbery with a dangerous weapon and possession of stolen goods; consequently, we vacate defendant's judgment for felony possession of stolen goods.

No error at trial; judgment vacated in part.

Judges WYNN and STEELMAN concur.